For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that plaintiffs' motion for partial summary judgment on Hyatt's counterclaims for breach of contract is GRANTED; and it is further

ORDERED that Hyatt's counterclaim is dismissed in its entirety; and it is further

ORDERED that the liability phase of the Skopbank Parties' contract claims against Hyatt will be tried to the Court sitting without a jury during the week of April 28, 1997.

James Perkins LOWERY, et al.,

v.

PRINCE GEORGE'S COUNTY, MARYLAND, et al.

Civil Action No. DKC 96–2848.

United States District Court, D. Maryland.

April 15, 1997.

Thomas Turner Ruffin, Jr., Law Office, Washington, DC, for James Perkins Lowery.

Sean D. Wallace, Deputy County Atty., County Admin. Bldg., Upper Marlboro, MD, Andrew J. Murray, Office of County Solicitor, County Admin. Bldg., Upper Marlboro, MD, for Prince George's County, Md.

Shelly E. Mintz, Office of Atty. Gen. Baltimore, MD, Kathy Frances Crosby, Office of Atty. Gen., Baltimore, MD, J. Joseph Curran, Jr., Baltimore, MD, for Alexander Williams, Jr.

Shelly E. Mintz, Office of Atty. Gen. Baltimore, MD, Kathy Frances Crosby, Office of Atty. Gen., Baltimore, MD, for Lloyd Johnson, Richard Moore, Pamela West, Judith Johnson, Phil Newsom, Marlene Jackson.

Andrew J. Murray, Office of County Solicitor, County Admin. Bldg., Upper Marlboro, MD, for N.H. Rhone, Jr.

## MEMORANDUM OPINION

CHASANOW, District Judge.

James Perkins Lowery, on his own behalf and on behalf of his minor child, Antonio, filed an eight count complaint in the Circuit Court for Prince George's County, alleging various civil rights violations pursuant to 42 U.S.C. § 1983 (counts three through seven), a conspiracy pursuant to 42 U.S.C. § 1985 (count eight), and two state tort claims— malicious prosecution (count one) and respondeat superior (count two). Plaintiffs contend that the Defendants wrongly charged, arrested, imprisoned, and tried the elder Lowery for sexually abusing Antonio. They seek compensatory and punitive damages. Among the defendants are Prince George's County ("the County"); former State's Attor-

ney Alexander Williams, Jr., in his official capacity;[1] Assistant State's Attorney Lloyd Johnson, in his official capacity; Assistant State's Attorney Richard Allen Moore, in his official capacity; Philip Newsom and Marlene Jackson, supervisors in the Department of Social Services ("DSS"), in their individual and official capacities; and Judith Johnson and Pamela West, also employees of DSS, in their individual capacities. Presently before the court are motions to dismiss filed by the County and by the people named above, who have referred to themselves collectively as the "State Defendants." Other defendants named in the complaint have not been served, were served but have not appeared, or have belatedly appeared.[2] This action was removed to this court from the Circuit Court by one of the defendants, Prince George's County. Later, the State Defendants consented to the removal. For the reasons that follow, this action must be remanded to the Circuit Court for Prince George's County.

## I. Eleventh Amendment Immunity

■ The Eleventh Amendment to the United States Constitution is a bar to suits against a State in federal court, unless Congress has exercised its power under § 5 of the Fourteenth Amendment to override this immunity or the State has waived it. *Will v. Michigan Dep't Of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989). With regard to claims under § 1983, neither method of overcoming the immunity

has occurred. The Eleventh Amendment[3] provides:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In this case, some of the defendants contend that the claims against them in their official capacity are barred by the Eleventh Amendment, because such claims essentially are claims against the State of Maryland. Although presented as a motion under Fed.R.Civ.P. 12(b)(6), failure to state a claim, this aspect of the motion is more appropriately brought under 12(b)(1), lack of subject matter jurisdiction.

■ An official capacity claim against a government employee is, in effect, a claim against the governmental unit. *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir.1995). Plaintiffs assert that the official capacity claims should be construed as claims against Prince George's County, and not the State, and thus are not barred by the Eleventh Amendment.[4]

## II. Department of Social Services

■ The County and DSS have moved to dismiss claims involving certain DSS employees, asserting that all the DSS defendants

1. Now a United States District Judge on this Court.

2. Defendant Nelson Rhone, a Prince George's County police officer, recently filed a "Motion to Set Aside Default Judgment" along with an Answer. While default orders—not judgments—were entered by the Clerk on March 26, 1997, pursuant to Fed.R.Civ.P. 55(a) against Defendants Rhone, Antoinette Keys, Carol E. Alstatt, and Chesapeake Institute for want of an answer or other defense, the court will vacate those default entries because the action must be remanded to the Circuit Court. That court may take whatever action it deems appropriate with regard to those defendants. See *Nutter v. Monongahela Power Co.*, 4 F.3d 319 (4th Cir.1993), for a discussion of the effect of findings made by a federal court incident to remand.

3. The Supreme Court also has held that the fundamental rule of federal jurisprudence exemplified by the Eleventh Amendment—that uncon-

senting states may not be sued in federal court by private parties—reaches attempts by citizens to sue their own states. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

4. It is contended by no one that the State of Maryland has waived Eleventh Amendment protection as to the claims asserted here. In any event, such a waiver will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Neither of those circumstances exist here.

are state employees.[5] The County points to Md. Ann.Code art. 88A, 1 and 13 (1995 Repl.Vol.) in support of the proposition that every local DSS is a state agency and also to § 13(c)(3) for the proposition that all employees of each such local agency are state merit system employees. It also cites Op. Att'y Gen. No. 91–050 (1991) (considering the legality of salary subsidies to DSS and specifically stating that local DSS are state agencies and their employees state employees). The State Defendants, moreover, rely upon case law, including *Keller v. Prince George's County Dep't of Social Services*, 923 F.2d 30, 32 (4th Cir.1991), which held in an employment discrimination action that the Prince George's County DSS is a state agency entitled to sovereign immunity from that plaintiff's claim. The linchpin of that holding was the court's determination that "since any judgment against the Department would be a judgment against the state, the Department is immune from suit." *Id.* That determination falls directly in line with the later holding in *Ristow v. South Carolina Ports Auth.*, 58 F.3d 1051 (4th Cir.1995), which, citing *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979), delineated six factors "considered useful" in determining the rightful application of Eleventh Amendment immunity to a government entity: (1) the characterization of the entity by the language of its creating statutes; (2) the origin of the entity's funding; (3) whether the state is financially responsible for the liabilities and obligations incurred by the entity; (4) the source of the power to appoint the officers or members; (5) whether the function performed by the entity is traditionally state or municipal; and (6) whether the entity's actions are subject to a veto by the state. Id. at 1052. However, the court also cited *Hess v. Port Auth. Trans–Hudson*, 513 U.S. 30, 47, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994) for the proposition that one factor is dominant—whether the state treasury must pay the losses and debts of the entity under scrutiny, because the passage of the Eleventh Amendment was prompted by the desire to shield state treasuries from federal judgments. *Ristow*, 58 F.3d at 1052. Clearly, DSS meets the indicia of a state agency prescribed by *Ristow* in terms of statutory base, state power over the agency and, most importantly, in that the font for payment of a judgment against DSS would be the state treasury. The claims against the DSS supervisors in their official capacity therefore are barred by Eleventh Amendment sovereign immunity.

### III. State's Attorney's Office

Somewhat less clear is whether the Eleventh Amendment shields Defendants Williams, Johnson, and Moore, who are sued only in their official capacities with the State's Attorney's Office and to whom reference is made only in Counts Four, Six and Seven alleging civil rights claims under § 1983.[6] All of them, as noted above, contend that they are State actors for purposes of the Eleventh Amendment.

Plaintiffs contend that in this case, at least, these three defendants should be considered officials of the municipality, i.e., Prince George's County. Plaintiffs cite *Blades v. Woods*, 107 Md.App. 178, 667 A.2d 917 (Ct. Spec. App.1995) in support of this proposition. That case, in turn, adopted the reasoning in *Hector v. Weglein*, 558 F.Supp. 194 (D.Md.1982). In *Hector*, Judge Kaufman, in considering a defense of Eleventh Amendment immunity, held that the Police Commissioner of Baltimore City should be considered a local official rather than a state official. However, Judge Kaufman based his finding on the facts that, in the relevant period, the Mayor had the power to appoint and remove the Police Commissioner for cause; a city agency had the power to investigate and review citizen complaints concerning the department; the city determined the

---

**5.** The four DSS employees named above are identified in the complaint as having worked in Child Protective Services and having participated in the investigation of sexual abuse of Antonio which apparently led to the arrest and prosecution of Mr. Lowery.

**6.** Each count in the complaint ends with a paragraph stating the relief sought from the various defendants. Read literally, the complaint seeks no damages against Defendants Williams, Johnson and Moore.

revenue that would be allocated to the department and provided two-thirds of it; the employees of the department were paid directly by the city and were covered by the same medical insurance policy as the other city agencies; a city agency conducted examinations for all positions in the department; all department contracts were made in the name of the city; and all salaries in the department were set by the Mayor and City Council. It is clear that the fact pattern drawn by Judge Kaufman was anomalous and it is not contended that those circumstances prevail in regard to the Prince George's County State's Attorney's Office.

Defendants cite to *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975) and *Valle v. Pressman,* 229 Md. 591, 185 A.2d 368 (1962), to support their argument that they are State actors under Maryland law for purposes of the Eleventh Amendment. The latter case squarely holds that the State's Attorney is a state official under Maryland law:

Appellants, while arguing that a State's Attorney is not a State-wide Officer within the meaning of the election statutes, do not challenge Judge Niles' holding that a State's Attorney is a State rather than a local officer. We find it plain that they could not successfully do so. The office is created by the Constitution which in Art. 5, Sec. 7, provides (in parts here pertinent): 'There shall be an Attorney for the State in each county, and the City of Baltimore, to be styled 'The State's Attorney,' who shall be elected by the voters thereof * * * and be subject to removal * * * by a vote of two-thirds of the Senate, on the recommendation of the Attorney–General.' Removal is thus a State and not a local function. The naming of a successor to a State's Attorney who dies or resigns during his term is confided to the Judges of the political subdivision in which he was serving, and Maryland Judges are Officers of the State. Attorney General Armstrong ruled in 6 Op. of the Attorney General 427 that a State's Attorney was a State Officer; and the Supreme Court, in *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89, 93, 55 S.Ct. 678, 679, 79 L.Ed. 1322, 1324, quoted the Court of Appeals of New York in *Fellows v. City of New York* (1876), 8 Hun. 484, 485, as follows: "It is conceded that the district attorney is a State Officer. It could not well be questioned" and held a District Attorney to be in a true sense an officer of the State.

*Valle,* 185 A.2d at 374.

There can be no doubt that the State's Attorney for each county and the City of Baltimore long have been considered to be state officials in Maryland and, indeed, that they meet the *Ristow* indicia in terms of statutory underpinning, the duties and functions of the office and state power over the office.[7] However, this court has little before it with which to address the critical factor of which fiscal font would be tapped to satisfy a judgment against a State's Attorney. Even the source of funding for the office is somewhat equivocal.[8] While it is not imperative to a finding of Eleventh Amendment immunity that a judgment against the State's Attorney would be enforceable against the state treasury, it seems that there must be some rational nexus to state fiscal concerns.[9] In this case, the court simply does not have before it sufficient facts to make the practical judgment reached by the court in *Ristow* and the issue of whether the State's Attorney is

7. The analysis is less clear as to the Assistant State's Attorneys, Defendants Johnson and Moore, who are not constitutional officers and who are not elected, although they are hired by and serve at the pleasure of the State's Attorney in Prince George's County. Md. Ann.Code art. 10, § 40(q).

8. In Md. Ann. Code art. 10 § 40(a) and (q), the state legislature sets the salaries and makes other provisions for the operations of the state's attorney's office of Prince George's County, but the state statute directs that the salaries and expenses will be paid by the County.

9. The court in *Ristow* reasoned that while a judgment against the South Carolina Ports Authority could not be enforced against the state treasury, there was an ebb and flow of funds between the state treasury and the Ports Authority which would be impacted by the payment of any judgment. Accordingly, the court held, a judgment against the Ports Authority reached the "core concern" of the Eleventh Amendment and the Ports Authority was entitled to its protection. 58 F.3d at 1052–53.

entitled to Eleventh Amendment immunity cannot be decided at this point. As will be discussed in the next section, however, it will not be necessary to resolve this issue in this case, inasmuch as the entire action will be remanded due to the finding of Eleventh Amendment immunity applicable to the DSS supervisors.

## IV. Remand

 Having decided that the Eleventh Amendment bars consideration of the official capacity claims against the DSS supervisors, the next question is the appropriate remedy. Defendants have moved to dismiss. However, in a case which has been removed to this court, the proper disposition of an "official capacity" claim against a state employee is not dismissal, but remand to the state court. *Roach v. West Virginia Reg'l Jail and Correctional Facility Auth.*, 74 F.3d 46 (4th Cir.1996) As the Court of Appeals for the Fourth Circuit explained:

> Remand to state court following removal is governed by 28 U.S.C. § 1447 (West 1994) and the statute is clear and unambiguous. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, *the case shall be remanded.*" 28 U.S.C. § 1447(c) (emphasis added.) The plain language of § 1447(c) gives "no discretion to dismiss rather than remand an action" removed from state court over which the court lacks subject-matter jurisdiction. *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 1710, 114 L.Ed.2d 134 (1991) (internal quotation marks omitted.)

*Roach*, 74 F.3d at 48–49.

 Thus, mandatory language in the federal removal statute gives no discretion to

this court to dismiss. This determination, in turn, gives rise to yet another question, namely, may the case be dissected into its various claims and parsed out between the state and federal courts based upon jurisdictional considerations or must the entire case be remanded to the state court from where it came? This question is the subject of a spirited judicial debate. The circuit courts of appeals which have analyzed the issue are divided and the district courts from circuits which as yet have not taken up the issue are divided as well. The Fourth Circuit has not squarely addressed the issue and this court has found but one reported district court decision from this circuit which, somewhat ruefully, even mentioned it.[10]

In *McKay v. Boyd*, 769 F.2d 1084 (5th Cir.1985), the court dealt with an action originally brought in state court on behalf of a minor injured when the automobile in which he was riding hit a bridge abutment. Mississippi's state highway agency and the private road-building contractor were the defendants. The action was successfully removed to the federal district court which awarded summary judgment to the contractor and dismissed the case against the state agency. The Fifth Circuit vacated the decision and remanded the entire case to the state court, reasoning that the statute providing for removal of that case, 28 U.S.C. § 1441, applied only to actions over which the federal district courts have original jurisdiction and that, moreover, the statute precludes removal if even a single claim in the action is not removable.

The decision in *McKay* came under fire in *Henry v. Metro. Sewer Dist.*, 922 F.2d 332 (6th Cir.1990), which rejected the *McKay* analysis as "fundamentally incompatible" with Supreme Court holdings in *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) and *Pennhurst State Sch. &*

---

**10.** After concluding that it had to remand part of a removed action to state court because a particular claim was barred by Eleventh Amendment immunity, the district court lamented, without analysis of an alternative: "Unfortunately, the competing policies underlying the Eleventh Amendment and Section 1983 claims, in addition to defendants' decision to remove this case to federal court, compel the court's ruling requiring the case to be litigated in two separate forums."

*Gray v. Laws*, 915 F.Supp. 747, 753 (E.D.N.C.), *on reconsideration in part*, 915 F.Supp. 762 (E.D.N.C.1994), *aff'd in part, vacated in part*, 51 F.3d 426 (4th Cir.1995). The appellate decision does not mention the remand order and, thus, it remains unclear whether that aspect of the case was on appeal. Rather, the Eleventh Amendment issue was addressed on the merits and the court stated that it was reviewing a judgment dismissing the official capacity claims.

*Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Henry,* the plaintiff had sued a Kentucky agency and several its officers in state court in both their official and individual capacities after his arrest and discharge subsequent to a investigation of illicit drug activities. The case was removed and the federal district court dismissed the claims against the agency and its officers in their official capacity as barred by the Eleventh Amendment. The district court also ruled that the officers were protected by qualified immunity as to several claims brought against them in their individual capacities; awarded summary judgment to all defendants on claims brought under the Racketeer Influenced and Corrupt Organizations Act; and remanded to the state court a pendent claim. On appeal, the plaintiff argued that the trial court erred in dismissing the official capacity claims, positing that the entire case should have been remanded to the state court. The court of appeals, quoting language from *Pennhurst*[11] and citing *Pugh* as an example, stated that the Eleventh Amendment jurisdictional bar "concerns individual claims, not entire cases" and noted that "both the Supreme Court and United States courts of appeals have addressed the merits of claims unaffected by the eleventh amendment despite the presence of barred claims." Henry, 922 F.2d at 338.[12]

However, as the Seventh Circuit subsequently reasoned in *Frances J. v. Wright,* 19 F.3d 337, 340–41 (7th Cir.1994), *cert. denied,* 513 U.S. 876, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), and more recently in *Gorka v. Sullivan,* 82 F.3d 772, 775 (7th Cir.1996), the issue is not the scope the Eleventh Amendment, but rather the jurisdictional ambit of the removal statute, 28 U.S.C. § 1441(a). The statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

Those decisions questioned the motivation behind the "paradoxical jurisdictional maneuver," *Frances J.,* 19 F.3d at 340, *Gorka,* 82 F.3d at 774, of removing a case and then attacking the federal court's subject-matter jurisdiction; cited the potential danger and inequity of forcing a plaintiff to litigate in two forums; and noted the appropriate role of the state courts in such instances. The court in *Frances J.* wrote:

> As the Supreme Court has taught from early in the Nation's history—state courts are competent and capable to decide those federal questions that, as under § 1441(a), would not be removable to a federal forum.... Since the Constitution's framers specifically chose to make the creation of lower federal courts optional, see U.S. Const. Art. III, had Congress decided not to exercise that option, state courts would necessarily act as the initial forum for the adjudication of nearly all federal questions. Today, as a general matter, state courts still have jurisdiction concurrent with that of lower federal courts to hear suits arising directly under federal law ... Since state courts have the power to adjudicate such federal questions, preventing a defendant from splitting a single case into two, one state and the other federal, furthers judicial economy.

19 F.3d at 341 (citations omitted).

The Seventh Circuit found, and this court agrees, that the language of 28 U.S.C. § 1441(a) is clear and unambiguous and,

---

11. "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." 465 U.S. at 121, 104 S.Ct. at 919.

12. Four district courts in the Ninth Circuit followed the reasoning in *McKay. See Robinson v. State of California,* 836 F.Supp. 717 (N.D.Cal. 1993); *Simmons v. State of California,* 740 F.Supp. 781 (E.D.Cal.1990); *Kelly v. California,* 687 F.Supp. 1494 (D.Nev.1988); and *Stephans v. State of Nevada,* 685 F.Supp. 217 (D.Nev.1988). The Ninth Circuit, however, eventually chose to follow the "better reasoned" approach of *Henry* and overruled those cases. *See Kruse v. State of Hawaii,* 68 F.3d 331 (9th Cir.1995).

therefore, not open to construction. When the court lacks jurisdiction over any claim in an action, the court's removal jurisdiction over the *action* is defeated and the action may not be removed. Moreover, were there room for construction, the statute must be strictly construed against removal.

> Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary.

*Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994) (citation omitted). Furthermore, the language from *Pennhurst* relied upon so heavily in *Henry* states no more than the "rather unremarkable proposition that a federal court must examine each individual claim to determine if Eleventh Amendment immunity bars federal court consideration of that individual claim." *Flores v. Long*, 926 F.Supp. 166, 170 (D.N.M.1995). Neither *Pennhurst* nor *Pugh* was a removal case and neither addressed the scope of removal jurisdiction under § 1441(a), and therefore there is nothing in them incompatible with a conclusion that a case was wrongly removed. *See id.* The district court in *Flores* determined that the case under consideration had to be remanded, "not because of the existence of claims barred by the Eleventh Amendment, but rather because the civil action should not have been removed in the first instance. 28 U.S.C. § 1441(a) (1994)." 926 F.Supp. at 170. That same conclusion clearly is warranted here.[13]

## V. Section 1983

█ While this court lacks the authority to consider the merits of any of Plaintiffs' claims, and must leave that task to the state court on remand, the remand may well turn out to be a pyrrhic victory for Plaintiffs. Section 1983 only provides an avenue of relief for civil rights violations perpetrated by a "person" acting under color of state law. State officials acting in their official capacities are not "persons" within the meaning of § 1983 in complaints for monetary damages and are not subject to suit in their official capacities under the act. *Will*, 491 U.S. at 65–68, 109 S.Ct. at 2309–11.[14] Thus, the DSS employees, and possibly the prosecutors as well, will be entitled to dismissal of the § 1983 claims against them in their official capacity.

One example of such a dismissal is *Kennedy v. Widdowson*, 804 F.Supp. 737 (D.Md. 1992), in which Judge Legg of this court considered a claim from Somerset County and, after looking to state law for guidance, found as a matter of federal law that in Maryland the Office of State's Attorney is a state office. As he noted, suing defendants in their official capacities "effectively brings suit against the governmental bodies for which the officials work." *Id.* at 740 (citation omitted). Judge Legg determined that the Office of the State's Attorney is constitutionally created and that the duties, salaries, and provisions for removal are in the hands of the state legislature. He also looked to state case law which has established that the State's Attorney is an official of the state executive branch and not a local official. *Id.* at 741 (citing *Rucker v. Harford County, Md.*, 316 Md. 275, 558 A.2d 399 (1989)).

## VI. Conclusion

For the foregoing reasons, an Order will be entered separately remanding this case to the Circuit Court for Prince George's County.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT Is this 15th day of April, 1997, by the United States District

---

**13.** In *Roach*, 74 F.3d at 49, the Fourth Circuit cited to *Smith v. Wisconsin Dep't of Agric., Trade & Consumer Protection*, 23 F.3d 1134, 1140 (7th Cir.1994) and to *Henry*, from the Sixth Circuit, and spoke in terms of remanding the "action" to state court. The only claims before the court at the time, however, were the official capacity claims against a state agency. Thus, the court was not called upon to decide the precise issue presented in this case and the citation to cases espousing opposing views leaves the matter unresolved in this circuit.

**14.** The definition of "person" under § 1983 is a separate issue from the Eleventh Amendment, but often turns on similar considerations.

Court for the District of Maryland, OR-DERED that:

1. The Default Orders entered by the Clerk in this case pursuant to Fed.R.Civ.P. 55(a) BE, and the same hereby ARE, VA-CATED;

2. This action BE, and the same hereby IS, REMANDED to the Circuit Court for Prince George's County, Maryland;

3. Pursuant to 28 U.S.C. § 1447(c), the Clerk will mail a certified copy of this Order and the accompanying Memorandum Opinion to the Clerk of the Circuit Court for Prince George's County, Maryland; and

4. The Clerk is directed to mail copies of the Memorandum Opinion and Order to all parties.